The DIAL CORPORATION, a Delaware corporation, Plaintiff,

v.

MANGHNANI INVESTMENT CORP., United Trading Corp., Perfumery Plus, Inc., Connecticut corporations, Global Fragrance Corp., a New York corporation, Bharat Manghnani, Chandru Manghnani and Michael Gomes, Defendants.

Civ. No. B 86–180 (TFGD).

United States District Court, D. Connecticut.

March 19, 1987.

---

Lawrence J. Greenberg, Gold, Bernblum & Greenberg, New Haven, Conn., for plaintiff.

Alan Neigher, Westport, Conn., for defendants.

DALY, Chief Judge.

After review and absent objection, the proposed ruling of the Magistrate is hereby ADOPTED, APPROVED, and RATIFIED.

Feb. 10, 1987.

THOMAS P. SMITH, United States Magistrate.

This is an action for damages and injunctive relief arising from alleged violations of the Tariff Act of 1930, 19 U.S.C. § 1526; the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a); the Connecticut Unfair Trade Practices Act, Conn.Gen. Stat. § 42–110(b) ("CUTPA"); the Connecticut Trademarks and Service Marks Act, Conn.Gen.Stat. § 35–11a et seq.; and Connecticut's common law of trademark infringement and unfair competition. Plaintiff has moved for summary judgment as to liability only against all seven named defendants on all six counts of its amended verified complaint (Filing 11). In their memorandum in opposition to plaintiff's motion, the defendants Bharat Manghnani, Chandru Manghnani and Michael Gomes have "requested" that their brief be considered as a "cross-motion" for partial summary judgment in their favor on the liability issue. (Filing 19 at 5).

## I.

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the movant has shown its entitlement to a judgment as a matter of law. Rule 56(c), F.R.Civ.P. *Schwabenbauer v. Board of Education,* 667 F.2d 305, 313 (2d Cir.1981). "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American Int'l Group, Inc. v. London American Int'l Corp.,* 664 F.2d 348, 351 (2d Cir.1981), *quoting Heyman v. Commerce & Indust. Ins. Co.,* 524 F.2d 1317, 1319–1320 (2d Cir.1975). Moreover, there must be no controversy as to reasonable inferences that can be drawn from the facts of record. *Danmar Associates v. Porter,* 43 B.R. 423, 427 (D.Conn. 1984) (Dorsey, J.), *citing Phoenix Savings & Loan, Inc. v. Aetna Cas. & Surety Co.,* 381 F.2d 245, 249 (4th Cir.1967). In assessing whether there are factual issues to be tried, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986), *citing Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2509–2511, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

## II.

The individually named defendants' "cross-motion" should be denied. An examination of the docket sheet reveals that the cross-moving defendants have conducted little, if any, discovery. While it is procedurally appropriate for a party to oppose a Rule 56 motion by filing a cross-motion, 6 J. Moore, *Federal Practice* ¶¶ 56.13 and 56.12 (1986), one who does so still must sustain a dual prong burden. *Heyman, supra.* On the instant record, such as it is, the cross-moving defendants have not demonstrated either an absence of genuinely disputed issues of material fact or entitlement to a judgment as a matter of law.

In reaching this conclusion the court has treated defendant Bharat Manghnani's "affidavit" as if it were signed and has disregarded the fact that no Local Rule 9(c)(1) statement has been submitted in support of the "cross motion". Resolving all ambiguities, and drawing all reasonable inferences, in plaintiff's favor, as the court must do when dealing with defendants' cross-motion, *Knight, supra,* on this record judgment cannot enter in favor of Bharat Manghnani, Chandru Manghnani and Michael Gomes.

## III.

The inadequacy of the factual record as to the individually named defendants requires a similar ruling on plaintiff's motion for summary judgment against Bharat Manghnani, Chandru Manghnani and Michael Gomes. Considering that counsel have devoted considerable time endeavoring to settle this case, it may be understandable that very little discovery has occurred. But good faith efforts of counsel aside, the present record reveals too few facts about the Manghnanis or Gomes for the entry of summary judgment against them. Accordingly, plaintiff's motion should be denied as to them for the foregoing reasons and substantially for those advanced by the individual, as opposed to corporate, defendants in their memorandum (Filing 19 at 4).

## IV.

■ Plaintiff has submitted a detailed annotated Rule 9(c)(1) statement in support of its motion. Paragraphs 1 through 11 of that statement are accepted as true for three reasons: (1) each appears to be grounded on established fact; (2) defendants have submitted no competing Rule 9(c)(2) statement, *cf. Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir.1984); and (3) defendants have not otherwise identified for the court's benefit precisely what issues of material fact they contend are genuinely disputed. *Securities & Exchange Comm'n. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978); *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir.1972).

Plaintiff's Rule 9 statement, pleadings and other supporting papers provide an adequate basis for the entry of partial summary judgment against all corporate defendants, but most especially the defendants Global Fragrance Corp. ("GEC") and Manghnani Investment Corp. ("MIC"). Though the record is somewhat more sparse with respect to the corporate defendants United Trading Corp. and Perfumery Plus, Inc., plaintiff's amended verified complaint alleges claims against them,

and defendants' answer contains admissions binding on all defendants.

Though defendants' opposing papers ask the court to differentiate between corporate defendants and those individuals who are named as defendants, the corporate defendants have offered no arguments or reasons why the court should draw among them distinctions which they themselves have not. Accordingly, while plaintiff's motion is stronger with respect to defendants GFC and MIC, the court concludes from the pleadings and opposing papers that all corporate defendants stand on the same footing and that the defendants, who have filed no Rule 9 statement, will not later be heard to complain that the assumption is inappropriate. *Cf.* 6 Pt. 2 J. Moore, *Federal Practice* ¶ 56.23 at 1390 (1985) (opponent not required to present evidentiary material in opposition to a motion where movant has not first sustained threshold burden as to each opponent).

The following have been established as facts to the magistrate's satisfaction:

1. Plaintiff Dial Corp. manufactures and sells throughout the United States, an anti-bacterial deodorant soap which is promoted and sold under the trademark "Dial" (hereinafter "American Dial Soap"). *See* Exh. A, 11.* The "Dial" trademark is registered with the United States Patent and Trademark Office. *See* Exh. B. A copy of the certificate of registration is on file with the Secretary of the Treasury.

2. Since 1947, Dial Corp. has spent considerable time, effort and money in developing consumer demand for American Dial Soap. It has done this through substantial and intense advertising and promotion, and through the delivery of a high quality product. These efforts have resulted in substantial name recognition among consumers for the trademark "Dial." In the eye of the American consumer, the trademark "Dial" is associated with the soap manufactured and sold by the plaintiff Dial Corp.

3. American Dial Soap is the largest selling deodorant soap in the country. It is

---

* All "Exh. ____" references are to the exhibits attached to the affidavit of Lawrence J. Greenberg, Esquire, submitted in support of plaintiff's motion.

used by one third of all households. Dial Corp. and American Dial Soap enjoy a reputation for quality, and have produced substantial consumer loyalty and good will which is essential to the continued commercial success of Dial Soap. *See* Exhs. A, ¶¶ 13–14 and C, ¶¶ 5–12.

4. Dial Corp. has licensed certain companies to manufacture and sell an anti-bacterial soap under the trademark "Dial" in countries other than the United States. Each such license identifies the specific territory or geographical area in which the licensee may sell Dial Soap, and none of the licenses includes the right to introduce the product into United States commerce or to use the trademark "Dial" on any soap sold in the United States. *See* Exh. A, ¶ 18.

5. One of the companies licensed to manufacture and sell an anti-bacterial soap under the trademark "Dial" outside of the United States is Allied Cosmetic Industries, Ltd. ("A.C.I."), which is located in Nicosia, Cyprus. *See* Exhs. A, ¶ 19 and D. (The "Dial" soap manufactured and sold by A.C.I. will hereinafter be referred to as the "A.C.I. Soap.") The A.C.I. licensing agreement specifically describes the geographical area in which A.C.I. is authorized to sell A.C.I. Soap, and A.C.I. is not, nor has it ever been, authorized to sell A.C.I. soap in the United States. *See* Exh. D at 1–2 and 3, ¶ 2.

6. Defendant Global Fragrance Corp. ("GFC"), acting through defendant Bharat Manghnani, imported 97 cases of the A.C.I. Soap from Jay Gee Traders ("Jay Gee"), in Dubai. Bharat Manghnani owns a 30% interest in Jay Gee. *See* Exh, H at 12 and 16–17. Defendant Manghnani Investment Corp. ("MIC"), also acting through Bharat Manghnani, MIC's president and sole owner, imported 5310 cases of the A.C.I. Soap from Grocexpol in Nicosia, Cyprus, in two lots of 3540 and 1770 cases each. *See* Exhs. E, F and H at 34 and 41–43.

7. Defendants were not authorized by Dial Corp. to import the A.C.I. Soap and they did not file a written consent executed by Dial Corp. at the time the A.C.I. Soap first entered the United States. *See* Exh. S at ¶¶ 49–50.

8. Defendant GFC sold the 197 cases to Pointer Sales, Inc. *See* Exhs. G at 25–26; H at 18 and 34, I and R. Defendant MIC sold a total of 5205 cases of the A.C.I. Soap to Encina Corp. ("Encina") in three lots of 1668, 1768 and 1769 cases each. *See* Exhs. H at 24–27 and 34, J, and K at 39, 58 and 61, L, M. and N.

9. Defendants GFC and MIC, acting through defendant Bharat Manghnani, imported and sold the A.C.I. soap with actual knowledge that it was manufactured in Cyprus. *See* Exh. H at 21, 31–32 and 49.

10. The A.C.I. Soap differs from genuine American Dial Soap in several respects.

(A) *Antibacterial Effectiveness:* Differences in the ingredients used and methods of processing of the A.C.I. Soap and genuine American Dial Soap cause the American Dial Soap to be substantially more effective than the A.C.I. Soap in providing antibacterial protection. The active ingredient triclocarban ("TCC") as used in the A.C.I. Soap is a standard TCC. However, the active ingredient TCC as used by American Dial Soap is further processed so as to make it solubilized. This further processing has been demonstrated to increase substantially the effectiveness of TCC in providing anti-bacterial deodorant protection. *See* Exh. O, ¶¶ 9–10.

(B) *Fragrance:* The A.C.I. Soap contains a fragrance that appeals to foreign consumers, according to fragrance preference tests. The American Dial Soap contains a different fragrance which is designed to appeal to consumers in the United States. *See* Exh. O at ¶ 8.

(C) *Size:* The A.C.I. Soap is sold in bars weighing slightly less than the American Dial Soap. The American Dial Soap is manufactured in 5 ounce bars while the A.C.I. Soap is manufactured in 4¾ ounce bars. *Compare* Exh. P, *with* Exh. Q.

(D) *Improper Labeling:* The label on A.C.I. Soap does not list all of the individual ingredients, dyes and colors contained in the soap. *See* Exh. A, ¶¶ 16–19. The A.C.I. Soap incorrectly lists the dyes FD & C Blue #1 and FD & C Green #3 as

included in the gold-colored bars of soap. *See* Exh. A, ¶¶ 20–21.

(E) *Lack of FDA Approval:* The dye which is designated as FD & C Blue # 1, which is used in the gold-colored bars of the A.C.I. Soap, is not approved for use in the United States, although it is appropriate for use in Cyprus and other countries. *See* Exh. A, ¶¶ 20–22.

(F) *Lack of FDA Listing:* The American Dial Soap is regulated by the FDA as a drug. The A.C.I. soap is not listed with the FDA. *See* Exh. A, ¶ 25.

11. There is a great likelihood that consumers would confuse the A.C.I. soap with American Dial Soap. The wrapper on the A.C.I. Soap bears the word "Dial", and that name is depicted in the same style of script as that used by Dial Corp. on American Dial Soap manufactured in the United States. *See* Exh. S at ¶ 47; *Compare* Exh. P *with* Exh. Q. In addition, like American Dial Soap, the A.C.I. Soap has the word "Dial" sculpted into the bar. The word "Dial" is depicted in the same style of script as that used by Dial Corp. on American Dial Soap.

## V.

Plaintiff seeks summary judgment as to liability on all six counts of its complaint. For convenience each of these counts is treated separately.

### A. TARIFF ACT COUNT

Count one of the amended verified complaint (Filing 11) alleges a violation of the Tariff Act of 1930, 19 U.S.C. § 1526(a). That statute provides that:

> .... it shall be unlawful to import into the United States any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States, ... and if a copy of the certificate or registration of such trademark is filed with the Secretary of the Treasury, ... unless written consent of the owner of such trademark is produced at the time of making entry.

Paragraph 47 of the amended verified complaint alleges that "defendants have imported into the United States soap which has the trademark 'Dial' sculpted into each bar, and which bears the trademark 'Dial' on the wrapper. This product was manufactured and sold by A.C.I. in Cyprus." Defendants' answer admits the allegations of paragraph 47 of the amended complaint. Defendants further admit that plaintiff is the owner of the trademark "Dial" and that the trademark is registered with the U.S. Patent and Trademark Office (Amended Complaint ¶ 46; Answer ¶ 46). Defendants further admit that they were not authorized by the plaintiff to import into the United States an antibacterial soap which bears the trademark "Dial" on either the bars or the wrappers, and that they did not file an authentic written consent executed by the plaintiff at the time the A.C.I. soap first entered the United States (Amended Complaint ¶¶ 49–50; Answer ¶¶ 49–50).

Section 1526(a) of the Tariff Act "confers an absolute unqualified property right upon American companies that own registered trademarks." *Coalition to Preserve the Integrity v. U.S.*, 790 F.2d 903, 910 (D.C. Cir.1986). Through that section Congress intended "absolutely to bar importation of goods bearing an American company's trademark without the company's consent". *Id.* at 912. The section contains no requirement of either: (1) proof of likelihood of confusion or deception; or (2) damage to goodwill or reputation. All that is required to establish liability under § 1526(a) is proof of the nonconsensual importation of foreign manufactured goods bearing a registered mark owned by an American corporation:

> "The statutory language is broad and unambiguous. It declares illegal the unauthorized importation of any merchandise of foreign manufacture bearing a domestically-owned trademark. Moreover, the legislative history amply demonstrates Congress's intent to bar imports even of "genuine" goods, where

the importation is not authorized by the domestic trademark owner."

*Premier Dental Products v. Darby Dental Supply Co.,* 794 F.2d 850, 857 (3d Cir.1986).

Plaintiff's moving papers, and the pleadings, provide a sufficient basis for summary judgment against the corporate defendants establishing their liability under the first count of the amended complaint.

### B. LANHAM ACT—§ 1114(1)

Count two of Dial's amended complaint alleges a trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), (2). In pertinent part that section provides:

> (1) Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
>
> ....
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

In *Franchised Stores of New York, Inc. v. Winter,* 394 F.2d 664 (2d Cir.1968), the Court of Appeals held that a cause of action for trademark infringement under the Lanham Act exists where a trademark has been used in commerce "(1) without consent; (2) in connection with the sale of goods; (3) where such use is likely to cause confusion or to deceive purchasers as to the source or origin of the goods." *Id.* at 668.

There is no dispute that the defendants used plaintiff's trademark in commerce, without its consent and in connection with the sale of goods (Amended Complaint ¶¶ 37, 57; Answer ¶¶ 37–57). The remaining question is whether in the circumstances of defendants' use of plaintiff's trademark there is "any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

■ The following factors should be considered in determining whether there is a likelihood of confusion:

> The strength of the mark, the degree of similarity between the marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion and the reciprocal of the defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25. (1961). No single factor is determinative, however. *Vision, Inc. v. Parks,* 610 F.Supp. 927, 930 (S.D.N.Y.1985). And an assessment also may take into account "the equities involved." *Information Clearing House v. Find Magazine,* 492 F.Supp. 147, 155 (S.D.N.Y.1980). Moreover, infringement can be found to have occurred in appropriate circumstances absent proof of "actual confusion." *Continental Connector v. Continental Specialties,* 492 F.Supp. 1088, 1091 (D.Conn.1979) (Newman, J.).

■ In this case defendants admit that the wrapper on the A.C.I. soap bears the word "Dial", and that the name "Dial" is depicted in the same style script that is used on American Dial Soap (Amended Complaint ¶ 39; Answer ¶ 39). The soap bars themselves have sculpted into them the word "Dial" in the identical style script that is used on American Dial Soap. In all other respects the "trade dress" of the wrappers is identical (Amended Complaint ¶ 40; Answer ¶ 40). Consumers seeing A.C.I. soap on display are likely to be confused, misled and deceived into thinking that the soap sold by defendants is American Dial Soap. This is especially so in view of the respective products' similar functions. *Id.* at 1097. In fact, in this case defendants' seems far more likely to cause confusion than the offending wiring de-

vices considered by Judge Newman in *Continental Connector*, for here only the most casual amount of care is likely to be exercised by a consumer given, among other things, the relatively modest cost of the product involved. *Sun-Fun Products, Inc. v. Suntan Research & Dev. Inc.*, 656 F.2d 186, 191 (5th Cir.1981).

The "Dial" trademark is a strong one. Dial Soap has been produced and sold in the United States by the plaintiff since 1947. It is America's largest selling deodorant soap. It is heavily advertised and enjoys a strong reputation for quality and reliability. Its commercial success is a function of the demand for plaintiff's product and the good will it enjoys among the consuming public. Defendants admit that in selling their product they have utilized the customer loyalty, name recognition and reputation which the plaintiff has earned in the United States (Amended Complaint ¶ 38; Answer ¶ 38). In the circumstances, it is unreasonable to draw any inference except that the defendants used plaintiff's mark with the intent of deriving from it, and from its reputation, a benefit which was not the defendants' to enjoy. *Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir.1980), citing *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979). This is especially damaging to plaintiff in view of the uncontroverted evidence that defendants' A.C.I. soap is inferior to American Dial Soap (Plaintiff's Exhibit C at ¶¶ 13–18).

For the foregoing reasons, summary judgment should enter against the defendants on the second count of the amended complaint.

## C. LANHAM ACT—§ 1125

The third count of the amended complaint alleges unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a). That section provides in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or rep-

resentation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is likely to be damaged by the use of any such false description or representation.

The "ultimate inquiry in most actions for false designation of origin", according to *Thompson Medical Co., Inc. v. Pfizer, Inc.*, 753 F.2d 208 (2d Cir.1985), is "whether there exists a 'likelihood that an appreciable number of ordinarily prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question.'" *Id.* at 213; *citing Mushroom Makers, Inc., supra*, 580 F.2d at 47.

For the reasons set forth in Part B, *supra*, the inference is inescapable that an appreciable number of ordinarily prudent consumers, upon seeking defendants' A.C.I. soap, would be misled and confused into believing that it is the same as American Dial Soap when, in fact, it is not. Moreover, defendants' distribution of A.C.I. soap in this country under the "Dial" trademark, in "trade dress" identical to that of American Dial Soap, is likely to induce consumers to believe falsely and erroneously that the manufacturer of A.C.I. soap is the plaintiff Dial Corp. *Gilliam v. American Broadcasting Companies*, 538 F.2d 14 (2d Cir.1976).

Defendants' contention that the soap they imported and sold is "genuine" does not forestall summary judgment. "Genuine goods" are foreign manufactured goods which are identical to those distributed domestically under an American trademark. *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392,

296–98 (2d Cir.1986). Here plaintiff's moving papers establish that the soap sold by defendants (i) provides less effective antibacterial protection; (ii) has a fragrance less appealing to American consumers; (iii) comes in a slightly smaller size bar; and (iv) contains dyes which are not approved by the FDA for use in the United States.

■ Even if the A.C.I. soap somehow could be considered "genuine", confusion is still likely, if not inevitable, under the established facts. The court disagrees with defendants' contention that "genuine" goods cannot create confusion. *Weil Ceramics & Glass, Inc. v. Dash*, 618 F.Supp. 700, 704–705 (D.N.J.1985) ("even if a trademark correctly identified the manufacturer of the goods, it will still be an infringing product if it deceived the public into believing that the domestic markholder's goodwill stood behind the product.")

Accordingly, summary judgment should enter in plaintiff's favor on the issue of liability under count three of the amended complaint.

### D. STATE STATUTORY TRADEMARK CLAIM

■ In the fourth count of its complaint, plaintiff alleges a violation of Connecticut's anti-dilution statute, which provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law shall be ground for injunctive relief against unauthorized use of such mark or trade name, or of a colorable simulation thereof, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

Conn.Gen.Stat. § 35–11i(c). There is no dispute that plaintiff is the owner of the valid trademark "Dial". Defendants, without plaintiff's authorization or consent, have used that mark in connection with their marketing of A.C.I. soap, whose antibacterial effectiveness is less than Dial Soap. Given the identical "trade dress" of the soap sold by defendants under the

name "Dial" common sense compels the conclusion that the public is likely to be confused as to the origin of defendants' soap, to believe that it was manufactured by the plaintiff, and to be disappointed in its performance or at the very least compare it unfavorably with American Dial Soap, all to the detriment of plaintiff's business reputation. Summary judgment, therefore, should enter in plaintiff's favor on the fourth count of the amended complaint.

### E. CUTPA

■ The fifth count of the amended complaint alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") which provides in pertinent part: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42–110b(a).

> "In order to prevail in a cause of action under CUTPA, the facts proved by the evidence must establish either 'unfair methods of competition [or] unfair or deceptive acts or practice' which 'have a potential effect on the general consuming public.' *Ivey, Barnum & O'Mara v. Indian Harbor Properties, Inc.*, 190 Conn. 528, 533 [461 A.2d 1369] (Conn. 1983)."

*McLaughlin Ford, Inc. v. Ford Motor Co.*, 192 Conn. 558, 567, 473 A.2d 1185 (1984).

The Connecticut Supreme Court has adopted the following criteria for determining when a practice is unfair:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been, established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers [ (competitors or other businessmen) ].

*Conaway v. Prestia*, 191 Conn. 484, 490–491, 464 A.2d 847 (1983), *quoting FTC v.*

*Sperry & Hutchinson Co.,* 405 U.S. 233, 244, 92 S.Ct. 898, 905, 31 L.Ed.2d 170 (1972). *Also see McLaughlin Ford, supra,* 192 Conn. at 568, 473 A.2d 1185. To the extent defendants' actions violated the Lanham Act, *see* Parts B and C, *supra,* they should be held automatically to violate CUTPA. Accordingly, plaintiff's motion for partial summary judgment on count five should be granted.

### F. COMMON LAW TRADEMARK INFRINGEMENT

 Plaintiff's sixth count alleges a violation of the state common law of trademarks. "The question to be determined is whether or not, as a matter of fact, the name is such as to cause confusion in the public mind ..., resulting in injury to the plaintiff. The test is whether the public is likely to be deceived" *Yale Co-op. Corp. v. Rogin,* 133 Conn. 563, 571, 53 A.2d 383 (1947); *Shop Rite Durable Supermarket, Inc. v. Mott's Shop Rite,* 173 Conn. 261, 265, 377 A.2d 312 (1977). "If there is sufficient similarity of names to deceive, it is not necessary to establish a fraudulent intent in the use of the name." *Id.* at 266, 377 A.2d 312. For all of the reasons discussed in Parts B through D, *supra,* summary judgment should enter in plaintiff's favor as to liability under the sixth count of the complaint.

### VI. CONCLUSION

Plaintiff's motion for partial summary judgment as to the defendants Bharat Manghnani, Chandru Manghnani, and Michael Gomes should be denied;

The cross-motion of defendants Bharat Manghnani, Chandru Manghnani, and Michael Gomes should be denied;

Plaintiff's motion for summary judgment on the issue of liability of the corporate defendants on all six counts of the amended verified complaint should be granted;

The parties are free to seek timely review by an Article III judge as provided by statute and Local Rules.