**CHAUVIN INTERNATIONAL LTD.**

v.

**David M. GOLDWITZ, et al.**

**Civ. No. 3–92–431 (WWE).**

United States District Court, D. Connecticut.

Sept. 8, 1993.

36

Barry Kramer, Alan Brufsky, Kramer, Brufsky & Cifelli, Southport, CT, for plaintiff.

Ralph Crozier, Crozier & Gudsnuk, Seymour, CT, for defendants.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

EGINTON, Senior District Judge.

Plaintiff brought this action charging defendants with trademark infringement and unfair competition in violation of the Trademark Law Revision Act, 15 U.S.C. § 1116, and the common law, as well as other counts charging defendants with false designation and/or description as to the origin and quality of goods in violation of 15 U.S.C. § 1125(a), dilution of the distinctive quality of plaintiff's family of marks in violation of Conn.Gen.Stat. § 35–11i(c), and unfair and deceptive trade practices in violation of Conn. Gen.Stat. §§ 42–110a through 110q. Plaintiff has filed the present motion for a preliminary injunction. For the reasons set forth below, the motion will be granted.

### FACTS

Plaintiff Chauvin International Ltd. is a California corporation which manufactures and sells sportswear under the trade name and mark B.U.M. EQUIPMENT and under numerous variations of BUM. Plaintiff sells clothing with BUM capitalized and in lower case, and with and without punctuation. Plaintiff's clothing is 100 percent cotton. Plaintiff's predecessor first began using the mark B.U.M. Equipment in interstate commerce in March, 1986. Plaintiff is currently the owner of numerous trademark registrations for B.U.M. EQUIPMENT, including, among others, b.u.m. blues, ROLLER B.U.M., SKI B.U.M., RACQUET B.U.M., B.U.M. RUNNER, and BASEBALL B.U.M. Additionally, plaintiff is expecting official registration of many other marks, such as B.U.M.ING AROUND, AQUA B.U.M., SOCCER B.U.M., and BUM FOR MEN. Plaintiff also has applications pending for the registration of several other BUM, bum, B.U.M., and b.u.m. related clothing designs. Finally, plaintiff claims to have a common law mark for B.U.M. UNIVERSITY. Plaintiff claims that its various uses of BUM constitute a family of marks with the surname BUM.

Plaintiff's sales of BUM clothing rose from $2,000,000 in 1987, to $150,000,000 in 1992. As should be expected from such a remarkable growth in sales, plaintiff's advertising expenses rose during the same period from $95,000 to $2,700,000. Plaintiff utilizes radio, television, billboards, bus poster and shelter signs, trade shows and publications, and posters at retail stores in its nationwide advertising campaign. Plaintiff gears many of its products towards the sports enthusiast market and, in fact, has a sponsoring relationship with several sports.[1]

Defendants David Goldwitz and Allena Lindsay reside in Milford, Connecticut and operate defendant Okee Dokee Inc., a Connecticut corporation having its principal place of business in Milford, Connecticut. Goldwitz had a business relationship with plaintiff from the mid–1970's to the end of 1991. In mid–1991, Goldwitz and/or Lindsay began to produce and sell clothing bearing the word BUM. Defendants have sold only $7,000 in BUM merchandise. Defendants initially manufactured shirts which were only part cotton. Today, their shirts are all cotton.

Prior to the introduction of a line of GOLF BUM clothing, defendants retained attorney Melvin Stoltz to determine the availability of this line. Following what appears to have been an incomplete search, Stoltz advised Goldwitz that GOLF BUM was available for adoption as a trademark for men's clothing. Stoltz did not review sources which may have identified common law marks. Stoltz' search did reveal one relevant prior BUM registration; McGregor has sporadically sold clothing bearing the mark BEACH BUM. All other BUM related registrations identified by Stoltz are distinguishable. Plaintiff alleges that defendants have counterfeited plaintiff's clothing and infringed on its trademarks.

Hearings were held over the course of several months on plaintiff's motion for a

---

1. Plaintiff sponsors the Los Angeles Kings and the Tom Landry Golf Tournament, and has sponsored the national Veteran's Golf Tournament. Plaintiff is a sponsor for formula racing cars and drivers. Professional heavyweight boxer Larry Holmes has worn boxing trunks and socks bearing the B.U.M. EQUIPMENT mark. Plaintiff also has a sponsorship relationship with volley ball tours, roller blade tournaments, and kick-boxing.

preliminary injunction. As instructed, the parties filed proposed findings of fact and conclusions of law following those hearings.

## DISCUSSION

■ In order to obtain a preliminary injunction in a trademark infringement action, "[t]here must be a showing of (A) irreparable harm and (B) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 78–79 (2d Cir.1981).

■ The first issue the court must resolve is whether there has been a showing of irreparable harm. A court may find irreparable harm solely from a showing of a substantial likelihood of confusion. *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir.1979). The key question is whether it is likely that "an appreciable number of ordinary prudent purchasers [will] be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Courts determine the likelihood of confusion by balancing the following factors: (1) the strength of plaintiff's mark; (2) the degree of similarity between the competing marks; (3) the proximity of the products; (4) the existence of actual confusion; (5) the defendants' good or bad faith; (6) the quality of defendants' merchandise; and (7) the sophistication of the consumer. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). A court must consider these factors according to the degree to which each is implicated, *Lambda Electronics Corp. v. Lambda Technology Inc.*, 515 F.Supp. 915, 925 (S.D.N.Y.1981), but not treat any one factor as conclusive, *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 218 (2d Cir. 1985).

## Polaroid Factors

### 1. Strength of the Mark

■ The court agrees with the plaintiff that BUM is distinctive, rather than merely descriptive. BUM is a fanciful mark which does not describe the characteristics of the goods. *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479 (S.D.N.Y.1968). Since the mark is fanciful, it is strong, *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 581 (2d Cir.1991), and given the most protection, *McDonald's Corp. v. McBagel's, Inc.*, 649 F.Supp. 1268 (S.D.N.Y.1986). Contrary to defendants protestations, plaintiff is not attempting to protect merely an ordinary and undistinguished syllable or word such as that discussed in *Creamette Co. v. Merlino*, 299 F.2d 55 (9th Cir.1962). Plaintiff has more than sixty registrations and pending applications for BUM related marks. This creates a rebuttable presumption that BUM is a distinctive mark. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976). Plaintiff's mark is further strengthened by the evidence of advertising, sales and name recognition associated with the BUM mark. *Arrow Fastener Co. Inc. v. The Stanley Works*, No. 2:91CV00981 (PCD) slip op. at 6, 1993 WL 443821 (D.Conn. Feb. 17, 1993).

Plaintiff's wide use of BUM on its clothing constitutes a family of marks which has a "synergistic recognition that is greater than the sum for each mark." *Quality Inns Intern. v. McDonald's Corp.*, 695 F.Supp. 198 (D.MD.1988). This family of marks covers both those marks which came into existence before and after defendants entered the market of BUM clothing. *American Standard Inc. v. Scott & Fetzer Co.*, 200 U.S.P.Q. 457, 459 (T.T.A.B.1978). The fact that some third parties have manufactured various items with BUM related insignias does not diminish the strength of plaintiff's family of marks. *AMF Inc. v. American Leisure Products, Inc.*, 474 F.2d 1403 (C.C.P.A.1973).

### 2. Degree of Similarity

Defendants have made much of the fact that there are a variety of ways of printing BUM. However, whether capitalized or not, or whether punctuated or not, BUM sounds

like B.U.M., b.u.m., or bum. That these forms of BUM are aurally identical is significant in finding a likelihood of confusion. *Arrow Fastener*, at 7, 1993 WL 443821. In addition, based simply on common sense, this court finds plaintiff's and defendants' marks to be quite similar.

### 3. Proximity of the Products

If products compete with each other they are proximate. *Lang*, 949 F.2d at 582. Both plaintiff and defendants produce cotton tee shirts and sweatshirts bearing some form of BUM. Both parties have promoted their goods at the same trade shows. Their goods compete. As such, they are proximate.

### 4. Actual Confusion

■ Plaintiff did not present the court with any substantial evidence of actual confusion. However, this is not determinative where a party seeks equitable relief. Plaintiff need only demonstrate a likelihood of confusion. *Warner Bros.*, 658 F.2d at 78. The court finds that the parties' goods create the "same overall impression" and that a consumer familiar with plaintiff's goods would likely be confused when presented with defendants' goods. *Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 893 (2d Cir.1982).

### 5. Defendants' Good or Bad Faith

■ The question here is whether defendants' adopted their marks " 'with the intention of capitalizing on plaintiff's goodwill and any confusion between [their] and the senior user's product[s].' " *Lang*, 949 F.2d at 583 (quoting *Edison Bros. Stores Inc. v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y. 1987)). Defendants' subjective intent is not relevant. *Estee Lauder, Inc. v. Watsky*, 323 F.Supp. 1064 (S.D.N.Y.1970). Awareness of an earlier mark may imply bad faith. *Centaur Communications, Ltd. v. A/S/M Communications Inc.*, 830 F.2d 1217, 1228 (2d Cir.1987). Having had a business relationship with plaintiff, Goldwitz obviously knew of plaintiff's marks.

### 6. Quality of Defendants' Merchandise

100 percent cotton clothing is of a higher quality than a blend. Plaintiff's clothing has always been all cotton. Although defendants' clothing is now 100 percent cotton, that was not always the case. If defendants were to again sell merchandise of inferior quality, plaintiff's reputation could be harmed because of consumer confusion over the origin of the goods. Plaintiff has the right to protect its reputation from this possibility. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259–60 (2d Cir.1987).

### 7. Sophistication of the Consumer

■ Goods which are inexpensive and casually bought require that their marks be easily distinguishable. *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir.1979). Sweatshirts and Tee-shirts are no longer as inexpensive as they once were. Nevertheless, these items are relatively inexpensive and not generally purchased with a great deal of forethought and comparison.

Based on the above analysis of the *Polaroid* factors, the court finds that there is a likelihood that a appreciable number of ordinary consumers are likely to be confused as to the origin of clothing with a BUM insignia.

### *Likelihood of Success and Questions Going to Merits*

■ Plaintiff must also show either that it will likely succeed on the merits or that there are questions serious enough to require litigation. The law is clear that the defendants may not use marks which may create confusion on the part of a consumer. *Hygienic Specialties Co. v. H.G. Salzman, Inc.*, 302 F.2d 614 (2d Cir.1962). This is a case involving alleged counterfeiting, trademark infringement and unfair competition. From the above finding of a likelihood of confusion—which goes to the heart of each claim, it is apparent that there exist serious questions which go to the merits.

### *Balance of Hardships*

Plaintiff's most recent annual sales were $150,000,000. Defendants have sold only $7,000 of BUM merchandise. Plaintiff has

sold BUM clothing for several years, while defendants have only recently entered this market. Defendants have other lines of clothing which do not bear a BUM mark. As previously stated, a return by defendants to the production of lower quality goods could result in damage to plaintiff's reputation. The court finds the balance of hardships to tip decidedly toward the plaintiff.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for a preliminary injunction [3–4] is GRANTED. In accordance with Fed. R.Civ.P. 65(d), during the pendency of this action, defendants are hereby ENJOINED and RESTRAINED from using in any manner a mark which includes the letters "BUM" in lower or upper case, separated by periods or without periods, spread apart or alone, or in combination with any word or words, design or designs, in connection with the advertising, offering for sale or sale of any product not produced or authorized to be sold by the plaintiff.