ARROW FASTENER CO., INC.

v.

The STANLEY WORKS.

Civ. No. 2:91CV00981 (PCD).

United States District Court,
D. Connecticut.

Sept. 14, 1994.

William H. Bright, Jr., Cummings & Lockwood, Hartford, CT, John J. Cotter, Cotter, Cotter & Sohon, Bridgeport, CT, Pasquale A. Razzano, Fitzpatrick, Cella, Harper & Scinto, New York City, for plaintiff.

Benjamin A. Solnit, Noble Francis Allen, Tyler, Cooper & Alcorn, New Haven, CT, Siegrun Kane, David H.T. Kane, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele & Richard, New York City, Carter LaPrade, Madison, CT, Richard F. Orr, Office of the Speaker, Hartford, CT, for defendant.

## MEMORANDUM OF DECISION

DORSEY, Chief Judge.

Arrow claims a registered trademark in "T–50" after November 14, 1989 and a common law trademark therein from the 1950's. It alleges Stanley's violation of its statutory, 15 U.S.C. § 1114 and 1125(a), and common law right in T–50 and unfair trade practices under Conn.Gen.Stat. §§ 42–110a *et seq.* Stanley claims that T–50 is a model number in which Arrow has no rights, that there is no likelihood of confusion, that its use fairly describes characteristics of its products and its use precludes Arrow on grounds of laches, estoppel and acquiescence. Stanley counterclaims seeking judgment that it does not infringe and that for want of recognition the registration should be cancelled.

## I. FACTS

In 1929, Morris Abrams started Arrow, a manufacturer of stapling machines. Sales increased steadily, new products were added and the company grew to become a dominant force in the market for devices used to attach materials to one another. A range of uses was fostered to create a broad market for staplers, from attaching papers to joining construction material. Hand staplers led to mechanical staplers, which led to electrical powered units. The next step, to pneumatic staplers, gives rise to the dispute.

Arrow used its name extensively as a trademark to identify its products. In the early 1950's, it marketed a heavier duty hand operated stapler identified as T-50. The appellation came to be applied to staples and other staplers. T-50 was used in promoting and advertising Arrow products. In a broad market, T-50 is recognized as identifying quality staplers for the home, in commercial usages, for do-it-yourselfers of light work and in the building industry. The name Arrow was associated with plaintiff's products also. Both signified to users a quality product. By itself, T-50 was recognized by a substantial number of consumers. Due to Arrow's product promotion, use of T-50 and the number of staplers (over 40,000,000) and staples (over 500,000,000 boxes) sold, more than any other stapler or staple, consumers, distributors and merchandisers associate the mark with the product and in turn with Arrow. T-50 has acquired a strong secondary meaning as a mark of a quality Arrow product. It is extremely important and valuable to Arrow, as 80% of its sales are generated by T-50 staplers and staples and the T-50 series of stapling products. The mark is prominent on Arrow's packaging and in its extensive advertising. A substantial amount of Arrow's advertising appears in the same publications as does defendant's.

In 1989 Arrow obtained a trademark registration for T-50. It has substantially, but not universally, noted registration by use of the circled "R" in advertising and labeling. Registration remains in effect. Registration added to the quality of the mark as identifying Arrow's product line and adds the presumption, albeit rebuttable, of validity. 15 U.S.C. §§ 1057(b), 1115(a). Arrow has not used a "TM" notice of a common law trademark, a matter of no negative significance. To expand its market and to meet competition from other staplers, Arrow has extensively advertised to exploit the T-50 mark in the do-it-yourself, construction and remodeling markets. It has used the mark to identify other stapler models, combined to differentiate their characteristics, Ex. 105, enhancing their identification as Arrow products.

The origin of T-50 is unknown. It was apparently arbitrarily selected. It is not generic. Defendant argues that "T" stands for tacker, an alternative description of the function of a stapler, and the "50" describes the metric diameter of the wire used for the staples. There was no showing that such was an accepted or recognized description of Arrow's product. A tacker is not a synonym for a stapler. Further the wire size is not consistently reflected in Arrow's or the industry's identification of models nor is it recognized by consumers as such. It is not used by Arrow solely as a model number nor is it restricted to the stapling device. T-50 has no descriptive function. It has some suggestive quality but is essentially arbitrary. It has gathered secondary meaning. It has substantial recognition, associated with the Arrow name as the source of a number of different products marketed under the T-50 mark. As a registered mark, it is presumed to be arbitrary or suggestive, not descriptive. *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976). It commands consumer and industry recognition and acceptance.

Defendant, a late comer to the staple market, has begun to market pneumatic staple guns under a label which prominently features the identification T50. This is alleged to describe a tacker and its maximum metric length staple. Defendant has neither advertised, nor sought to educate its customers to such effect. This claim is not credited in the face of the evidence, or from defendant's personnel, *See* depositions of Blythe and Amey. It is claimed that a number used with the T, e.g., T-26, 29, 31, 36, among others, did not universally signify the maximum usable staple length, either in the in-

dustry, to the public nor in defendant's own product line. The 2–inch maximum length staple used is closer to 51 mm. than it is to 50 mm. Further, the greater volume of defendant's business is selling staples, not staplers, which are the mechanical means of affixing staples. Some of the numbers used to identify the staplers were arbitrary selections. Defendant was on notice of the trademark status of T–50. Prior to introduction of the T50/55 products it conducted an investigation of all aspects of Arrow's business in relation to a possible bid to purchase Arrow. It is held to have known of the T–50 registration. Prior to any significant use of T50/55, defendant was informed of plaintiff's infringement claim by letter dated March 5, 1991. Exs. 55–60. It failed to respond, *See* Exs. 57, 58, 59 and 60. Ignoring the letters smacks at least of indifference, if not an arrogant disregard of a claim that was, on its surface, not without a degree of merit. It is also not without significance that Stanley did not respond by contesting the validity of the claimed mark. It has recognized plaintiff's trademark rights. *See* Exs. AR, 51. Defendant uses T50/55 with other lettering to identify models of pneumatic staplers. The boxes in which such are shipped and displayed for sale prominently display the T50 in print twice the size of the other letters/numbers and are separated therefrom. Ex. B–2. Defendant claims that by checking one of six added parts of a model number (S2–1, S2–2, S4–1, S4–2, S5–1 and S5–2), the same box can be used for the six models which differ slightly in performing characteristics. It used the same labeling for its T40, T55 and T60 lines, Exs. AP, AQ and B–1, but on the side panel of the box. On the top of the T50 box, in the same bold, enlarged print, T50 appears by itself, as it does on the stapler itself. The maker of the product is less prominently identified. The T50 identification was intended to attract buyers attention and to communicate to them with respect to the product. Exhibits AP, AQ and B–1 are no longer in use but the boxes now used, Exs. AZ–1 and AZ–4, do not feature T50. Staple packages are marked T50.

Stanley pneumatic staplers have considerably greater force than hand or electrically driven staplers. Arrow does not market a pneumatic stapler. It has an electrically driven stapler in development, Ex. 262, possibly also to be used to drive nails. Its force is planned to compare with pneumatic staplers. Such heavy duty tools are not purchased by buyers of Arrow's T–50 stapler. They are sold in the same sections as T–50 labelled products in many stores. Staplers range from small, low power, inexpensive models, using small staples for paper, to large, high power, expensive models, using large, long staples in building construction. The T–50 is close to the low end in size, driving power, size of staple and cost. Homeowners do not use pneumatic staplers. Contractors do not use lightweight small staplers in construction. There is an overlap among products. The full range of products is not carried at all stores but the largest sellers, lumber yards, hardware stores, home centers and the like, carry a full range of staplers. Arrow's products are the most universally carried and are almost always found where Stanley's line is found. The T–50 products do not directly compete with pneumatic staplers but they have a common purpose and use within the same fields, although not used in precisely the same *circumstances*. They are not used with precisely the same materials. Large, long staples are used to provide greater holding force. All staplers drive staples of different sizes. The T–50's maximum length staple, $\%_{16}''$ is only slightly smaller that the T50's smallest usable staple, $\%''$. Though Stanley's T50 products are not identical to Arrow's T–50 products, they are close enough in function in the market in which they are sold to permit the finding of confusion made here. Consumer recognition of T–50 is likely to lead to the presumption that the source of products marked T50 is the same as those marked T–50. *See* Ex. 103. This is especially true as the use of T50 is not linked or placed with defendant's name to distinguish it from T–50.

What has above been found as to the recognition of the T–50 mark has not been proven as to T–55 as a common law mark.

Staplers are akin to nail drivers. Both fasten materials together. Power drives can be adapted to accommodate different nail and staple configurations. Nailers are more

commonly used in the construction business. Though Stanley T50 pneumatic staplers are more commonly used in construction, there are many uses for less powerful devices driving smaller staples in the construction trades. Buyers of pneumatic staplers are likely to be exposed to and familiar with Arrow's trademarks.

Stanley purchased two makers of stapling devices and materials, Parker and Bostich, and thus came to market a range of fastening devices and the tools that seat them in stores which sell to consumers of both Stanley and Arrow products.

## II. CONCLUSIONS

■ The T-50 mark is substantially recognized by the public and by the construction trades as identifying Arrow products which enjoy a high regard for quality, durability, value and utility. The mark is not known nor regarded as a model number nor is it limited to identity of a single Arrow product. Promotion and sale volume has caused the mark to be associated with a range of Arrow products. Addition of more powerful staplers and nailers is a natural and reasonably likely expansion for Arrow. Arrow is not likely to produce a pneumatic stapler. Its more powerful electric stapler, being developed, could function comparably and compete with Stanley's pneumatic fasteners.

Stanley has shown no meaningful effort to distance its mark from Arrow's. The strength of Arrow's T-50 mark and defendant's use, so close, if not identical (the absence of a hyphen in T50 is found to be an insignificant difference), is reasonably likely to cause confusion as to the source of Stanley's T50 staplers. An appreciable number of the public looking for products made by the maker of T-50s would be prompted to believe that T50 products originate at the same source as T-50 products. Arrow has proven that T-50 signifies to many consumers quality products made by Arrow. Stanley's use of T50 is thus unlawful. *Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928).

Defendant's products have considerable quality. Buyers of Stanley's pneumatic staplers tend to have knowledge and skill as to the tools of their trade. However, they were not shown to be sophisticated. See *Wincharger v. Rinco, Inc.*, 297 F.2d 261 (C.C.P.A. 1962). The latter factor lends limited support to a finding of strength in plaintiff's mark.

■ The last factor to be considered in determining the strength of the mark is Stanley's good faith in adopting the use of T50. Stanley argues that its full model number, e.g. T50S2-1, must be considered. However, the T50 in bold, enlarged print, isolated on two sides and alone on the top of its boxes is inconsistent with an innocently derived model number. That "T" could stand for tacker is not illogical. Nor is the claim that "50" is a metric maximum staple length, although the size is actually 2 inches which is closer to 51 millimeters. Further the dominant market is in the United States where metric measures are not used, though they are used in Stanley's smaller foreign market.

Since Stanley was aware of Arrow's mark, its use of a close duplication of Arrow's mark is inconsistent with its obligation to avoid all likelihood of confusion with Arrow's products. *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir.1987). Its stated reason for using this mark is not unsound. What suggests bad faith is Stanley's failure to respond to Arrow's complaint. The unexplained failure suggests an arrogant indifference to a real possibility of infringement. A reply would have suggested good faith. That the misguided conduct came after selection of the label and that the stated basis for the choice is not devoid of logic prompts the finding that Stanley, while not engaged in a fair use as a mere matter of description, 15 U.S.C. § 1115(b)(4), has not been proven to have acted in bad faith.

All the evidence considered together, applying the pertinent factors, *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), sufficiently proves likely confusion from defendant's use of T50. *Syntex Laboratories, Inc. v. Norwich Pharmacal Company*, 437 F.2d 566, 568 (2d Cir.1971); *Lois Sportswear, U.S.A. v.*

*Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir.1986).

Stanley's mark does not merely describe the product. Even if "T" stands for tacker, there was no evidence that the "50" would be understood to describe the length of the accommodated staple. *See* 15 U.S.C. § 1115(b)(4). Stanley's use does not fairly, in good faith, describe the unit meaningfully. 15 U.S.C. § 1115(b)(4). Further, the mark is in bold print, remote from the rest of the model number drawing attention in isolation. It thus suggests an origin consistent with Arrow's mark.

Stanley's defenses of laches, estoppel and acquiescence have not been proven. Arrow acted promptly upon discovering Stanley's use of the mark, gave notice of its claim, waited for a reply for a period during which Stanley stalled, and brought this action.

### III. *CLAIMS*

■ Arrow's infringement claims depend on proof of confusion as to the source of defendant's products resulting from its use of plaintiff's mark. Put another way, is it reasonably likely that consumers' recognition of plaintiff's mark is sufficiently high that defendant's appellation of its products is likely to suggest that Stanley's products originate with Arrow. This is true for a violation of the registered mark under § 1125(a) and under the common law. It is found that defendant has violated plaintiff's rights in its registered mark, T–50, 15 U.S.C. § 1114, by unfair competition in its use of a mark likely to be confused with Arrow's trademark, 15 U.S.C. § 1125(a), and in violation of the common law right to its trademark, T–50. Conduct violative of Arrow's trademark rights also violates Connecticut's Unfair Trade Practices Act, Conn.Gen.Stat. §§ 42–110a *et seq. Dial Corp. v. Manghnani Investment Corp.,* 659 F.Supp. 1230, 1238 (D.Conn.1987); *Larsen v. Ortega,* 816 F.Supp. 97, 111 (D.Conn.1992) *aff'd* 990 F.2d 623 (2d Cir. 1993).

While defendant's conduct reflects no real effort to avoid the violation, it cannot be found to be of the exceptional degree as to warrant punitive damages or attorney fees. The infringement is not found to have been malicious, fraudulent nor wilful. The mark was not used on products identical in function, price nor size as to compete directly with specific Arrow products and only a small number of them, in comparison with Arrow's sales, were sold. Stanley's explanation for its choice of a mark, though not exonerative, dilutes the quality of its actions.

### IV. *COUNTERCLAIMS*

■ Defendant has not proven the elements of its claims that plaintiff's T–50 trademark is invalid or subject to cancellation. The T–50 mark is found to be arbitrary. It is fanciful, having no inherent significance or meaning as applied to the original hand stapler and as it has come to be applied to a line of products. *Louisiana World Exposition, Inc. v. Logue,* 746 F.2d 1033, 1040 (5th Cir. 1984). It is not generic nor descriptive, either to the industry or to consumers. Additionally, the mark has acquired secondary meaning over the years from market success, product quality and consumer and industry recognition, and has come to identify the products with which it is used as originating with Arrow prior to defendant's decision to use and actual use of the mark. *Bardahl Oil Co. v. Atomic Oil Co.,* 351 F.2d 148, 150 (10th Cir.1965), *cert. denied,* 382 U.S. 1010, 86 S.Ct. 619, 15 L.Ed.2d 526 (1966); *Thompson Med. Co., Inc. v. Pfizer, Inc.,* 753 F.2d 208, 217 (2d Cir.1985).

### V. *RELIEF*

Defendant is enjoined from using the mark, T50, or any mark comparable or similar to plaintiff's T–50 trademark in any manner related to any stapling, tacking or fastening product. Defendant may seek a modification deferring compliance for a reasonable time to redesignate products, procedures, documents and materials allowing for expense and customer adjustment.

Normally, plaintiff would be entitled to recover the profits of defendant's infringement. 15 U.S.C. § 1117. The record reflects limited sales of T50 units by defendant and no reflection of revenue or costs. No award of profits can be made on this record.

Under the infringement claims, "in exceptional cases" an award of attorney's fees may be made. 15 U.S.C. § 1117. Under CUTPA, an award of attorney's fees is discretionary. Conn.Gen.Stat. § 42–110g(a). For the reasons noted above, on neither ground is it found that such fees should be awarded.

It would be inappropriate to conclude this memorandum without complimenting all counsel on both sides for their professional dealing with the Court and each other and for their thorough and competent preparation and presentation which has greatly aided the Court in its dealing with this case.

SO ORDERED.