**CHAUVIN INTERNATIONAL LTD., Plaintiff,**

v.

**David M. GOLDWITZ, et al., Defendants.**

**No. 3:92 CV 0431(GLG).**

United States District Court, D. Connecticut.

June 7, 1996.

David M. Goldwitz, pro se.

Allena C. Lindsay, pro se.

## MEMORANDUM DECISION

GOETTEL, District Judge.

In this trademark infringement action, Plaintiff has moved for summary judgment asking this Court to find that Defendants David M. Goldwitz and Allena Lindsay have infringed and counterfeited Plaintiff's "BUM" [1] family of trademarks. Plaintiff further asks this Court to permanently enjoin Defendants from using, in connection with the sale of clothing or related accessories, any mark or trade dress that includes the letters "BUM." For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Document # 137) is GRANTED.

### Background

In 1992, Plaintiff commenced this action against Defendants David Goldwitz, Allena Lindsay, and Okee–Dokee, Inc.,[2] for infringement and counterfeiting of its registered and common-law trademarks in violation of the Trademark Law Revision Act (the Lanham Act), 15 U.S.C. § 1051 *et seq.*, common law and Connecticut's Unfair Trade Practices Act, C.G.S.A. §§ 42–110a *et seq.*, by virtue of their alleged misappropriation of Plaintiff's "BUM" family of marks. Plaintiff alleges that Defendants used the "BUM" mark, in conjunction with other words, on articles of sports clothing, such as sweatshirts and T-shirts, that were the same type that Plaintiff sells.

In conjunction with the filing of the Complaint, Plaintiff filed an *ex parte* motion for a temporary restraining order, a seizure order and other relief. After an *ex parte* hearing, the motion was granted, based on the Court's finding of "substantial evidence [that] the defendants have infringed and are continuing to infringe plaintiff's "BUM" trademarks, and [that] plaintiff is likely to succeed in showing that defendants have used a counterfeit mark and/or infringement of plaintiff's trade dress in connection with the sale, offering for sale or distribution of goods or services." Order of Sept. 17, 1992 (Eginton, J.). Thereafter, Defendants' sportswear that was substantially identical to that of Plaintiff's was seized by a United States Marshal. A show cause hearing was then held, and the bond that had been posted by Plaintiff was increased to $5,000.

---

**1.** Unless otherwise indicated, use of the term "BUM" in quotations shall refer to any one or more of the "BUM" trademarks, whether or not capitalized, and whether or not there are periods between the letters.

**2.** A default judgment was entered against Okee–Dokee, Inc., on March 24, 1994.

On October 8, 1992, the Temporary Restraining Order expired after one renewal, and the hearings on Plaintiff's Motion for a Preliminary Injunction commenced. Hearings were held over portions of fifteen days from October of 1992 until July of 1993. On September 7, 1993, this Court granted Plaintiff's Motion for a Preliminary Injunction. *Chauvin International, Ltd. v. Goldwitz,* 832 F.Supp. 35 (D.Conn.1993) (Eginton, J.), *aff'd,* 40 F.3d 1237 (2d Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 96, 133 L.Ed.2d 51 (1995), *reh'g denied,* —— U.S. ——, 116 S.Ct. 757, 133 L.Ed.2d 703 (1996).

As this Court noted in its Order, in order to obtain a preliminary injunction in a trademark infringement case, there must be a showing of (1) irreparable harm and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting the preliminary relief. 832 F.Supp. at 37, citing *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78–79 (2d Cir.1981).

The first issue addressed by this Court was that of irreparable harm. Because a finding of irreparable harm in a trademark infringement action may be based solely on a showing of a substantial likelihood of confusion, *see In re Vuitton et Fils S.A.,* 606 F.2d 1, 4 (2d Cir.1979), our examination of the evidence focused on whether there was a substantial likelihood of confusion between Plaintiff's mark and that of Defendants. Following the dictates of the Second Circuit, this Court performed a "thorough, delineated analysis of the eight ... factors" [3] elaborated in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), including (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith in adopting the mark; (7) the quality of the defendant's product; and (8) the sophistication of buyers.

Based on this Court's analysis of these eight factors, this Court determined that there was a likelihood that an appreciable number of ordinary consumers were likely to be confused as to the origin of clothing with a "BUM" insignia. 832 F.Supp. at 38. As to the second prong of the test for a preliminary injunction, the Court held that there were serious questions going to the merits, and that the balance of hardships tipped decidedly in favor of Plaintiff. *Id.* at 39.[4] Thus, this Court enjoined and restrained Defendants from using in any manner a mark which includes the letters "BUM" in lower or upper case, separated by periods or without periods, spread apart or alone, or in combination with any word or words, design or designs, in connection with the advertising, offering for sale, or sale of any product not produced or authorized to be sold by Plaintiff. *Id.*

This decision was affirmed by the Second Circuit in an unpublished opinion,[5] 40 F.3d 1237 (2d Cir.1994), and thereafter Defendants' petition for writ of certiorari to the Supreme Court was denied, —— U.S. ——, 116 S.Ct. 96, 133 L.Ed.2d 51 (1995), as well as Defendants' petition for rehearing, —— U.S. ——, 116 S.Ct. 757, 133 L.Ed.2d 703 (1996).

On January 21, 1994, Defendant Goldwitz [6] filed a motion for a stay of the preliminary

**3.** *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 399 (2d Cir.1995).

**4.** In a trademark infringement case under the Lanham Act, a showing of a likelihood of confusion has been held by the Second Circuit to establish irreparable harm as well as a likelihood of success on the merits. *Hasbro, Inc. v. Lanard Toys, Ltd.,* 858 F.2d 70, 73 (2d Cir.1988).

**5.** The Second Circuit found that this Court's findings of fact were not clearly erroneous. The Appeals Court then reviewed *de novo* this Court's ultimate conclusion that Defendants' "BUM" marks were likely to cause confusion and agreed that there was a likelihood of confusion. The Second Circuit concurred with this Court that the numerous ways in which "BUM" can be written did not lessen the confusion.

**6.** Defendants Goldwitz and Lindsay were originally represented by counsel, but counsel withdrew in December of 1993. Thereafter Defendants Goldwitz and Lindsay have proceeded *pro se.*

injunction, which was denied. Again, on March 11, 1994, Defendant Goldwitz filed another such motion pending his appeal, which was also denied. On July 15, 1994, Defendant Lindsay filed a motion to stay the preliminary injunction, which was denied.

On November 7, 1995, Defendants Goldwitz and Lindsay moved this Court once again for a stay of the preliminary injunction. Defendants argued that there was newly discovered evidence that Plaintiff intended to deceive the public through its use of the registered trademark symbol (the encircled "R" ®) with the word "BUM" alone, even though this specific word has not yet been registered with the Patent & Trademark Office. Thus, they contend that the stay should be lifted due to Plaintiff's "unclean hands." Defendants have filed a number of items of physical evidence, mostly articles of clothing,[7] which appear to have been marketed by Plaintiff, bearing various "BUM" trademarks.

In responding to this Motion for Stay, Plaintiff also filed the instant Motion for Summary Judgment, relying in large part on the facts set forth in this Court's 1993 decision on the Motion for Preliminary Injunc-

tion. Plaintiff contends that there exists no genuine issue of material fact as to Defendants' infringement of its family of "BUM" trademarks and its entitlement to a permanent injunction.[8]

Defendants have responded that there are issues of fact to be tried, that there is new legal precedent adverse to Plaintiff, and that Plaintiff, having come into this Court with unclean hands, is not entitled to any relief whatsoever. Defendants rely in large part on the evidence previously considered by this Court in its ruling on the preliminary injunction. However, in addition, as noted above, Defendants have filed a number of items of physical evidence, as well as a number of newspaper advertisements by retail stores showing "BUM" with the registered trademark symbol, "®".

### Facts

Plaintiff relies on the facts found by this Court in its ruling on the Preliminary Injunction. We shall do likewise, indicating where appropriate any facts that are contested by Defendants, or any new evidence relied on by

---

**7.** In referencing these items of physical evidence, we do not intend to suggest that we condone the manner in which this "evidence" was presented to the Court. The physical items of clothing were not accompanied by a sworn affidavit as to the origin of the clothing, *et cetera*. However, recognizing that Defendants are proceeding *pro se*, we have considered these items in connection with the arguments raised by Defendants in their Motion to Stay the Preliminary Injunction and in their various responses to Plaintiff's Motion for Summary Judgment.

The articles that were submitted are as follows:
1) an adult T-shirt bearing an inside label and tag of "B.U.M. EQUIPMENT ®" and the logo "Bum ® Foreign & Domestic Auto Wrecking";
2) an adult T-shirt with the same label and tag and bearing the logo "Beach B.U.M. Equipment ®";
3) ladies' shorts and sleeveless T-shirt with the same label and tag, and with an additional label on the outside of each article "BUM * * * EQUIP * * * MENT ®";
4) a pair of adult plaid shorts with the same inside label and tag, and with an additional tab on the back pocket "REG—B.U.M.—TM";
5) an adult T-shirt with the same inside label and tag and with a large logo on the front "BUM EQUIP ® ORIGINAL TRADEMARK

BEST BRAND" with a small flower or insignia in the center;
6) adult denim shorts with a large inside label of "b.u.m. equipment ®", a tab on the front pocket with "BUM ®", a large leather patch on the back waist band with "B.U.M. EQUIPMENT ®", and a paper tag on the front with the size and "Authentic B.U.M. EQUIPMENT Product";
7) an adult T-shirt with an inside label and tag of "B.U.M. EQUIPMENT ®" and "b.u.m. ®" embroidered in large letters on the front;
8) an adult striped T-shirt with the same inside label and tag with "Bum" embroidered in small cursive writing on the front;
9) an adult T-shirt with the same inside label and tag with "Bum ® PAINTING SERVICE" on the front of the shirt;
10) a large plastic bag bearing the logo "b.u.m. equipment ®".

**8.** Significantly, Plaintiff did not request as relief in its motion for summary judgment actual and punitive money damages against these two remaining Defendants, as originally demanded in its Complaint. Plaintiff has asked, however, for summary judgment, granting it injunctive relief, by which we assume that, if granted, that is to conclude this action.

Defendants.[9]

Plaintiff, Chauvin International Ltd.,[10] is a California corporation which manufactures and sells in interstate commerce sportswear under the tradename and mark "b.u.m. equipment" and under other variations of "BUM" tradenames. Plaintiff uses the word "BUM" capitalized and with lower case letters, with and without periods between the letters, in various sizes and typestyles. The mark is placed on the sportswear in a number of ways, such as through screen printing, by applying it to labels that are sewn onto the clothing, and by embroidery.

Defendants do not dispute the fact that Plaintiff (or its predecessor) has sold sportswear since 1986 with the "b.u.m. equipment" trademark, but they contend that this was the only trademark used at the outset, and that Plaintiff always used "B.U.M." as an acronym (for what they do not state), with the letters separated by periods.[11] Plaintiff has more than sixty registrations and pending applications for "BUM" related marks, including "b.u.m. blues" (Stylized), "b.u.m. wear", "b.u.m. it", "ROLLER B.U.M.," "B.U.M. RUNNER," "SKI BUM," "RACQUET B.U.M.," and "BASEBALL B.U.M."

and uses many more BUM marks than it has registered. In addition, Plaintiff has filed applications for the registration of the following trademarks, "BUM," "bum," "B.U.M.," "b.u.m.," on clothing.[12] As we have previously found, Plaintiff's mark is further strengthened by its advertising, sales and the name recognition associated with the "BUM" mark.

Plaintiff's sales of BUM clothing increased from $2,000,000 in 1987 to $150,000,000 in 1992.[13] In the same years Plaintiff's advertising expenses increased from $95,000 to $2,700,000. Plaintiff utilizes radio, television, billboard, bus posters, trade shows and publications to advertise its merchandise, many of which are geared toward the sports enthusiast.

Defendant Goldwitz had been associated with Plaintiff from the mid–1970's until the end of 1991 (although not necessarily at all times), and from 1986 to 1991 he sold Plaintiff's "BUM" line of clothing.[14]

In 1991, Defendants began producing and selling clothing bearing the words "GOLF BUM" with no periods between the letters "b," "u," and "m."[15] Defendants had re-

9. Repeatedly throughout their opposition to Plaintiff's Motion for Summary Judgment, Defendants characterize Plaintiff's arguments and its Statement of Material Facts as a "fraud" or a "fraud upon the court." We have carefully reviewed all of the papers filed in conjunction with the motions that are being considered in this Order and we find nothing to indicate fraud on the part of Plaintiff or its attorney.

10. Plaintiff Chauvin International, Ltd., has recently moved this Court for an Order substituting B.U.M. International, Inc., as party Plaintiff, which Motion we have granted. B.U.M. International, Inc., was the result of the merger of Chauvin International, Ltd., with CAMI'Z, a public corporation. On April 10, 1996, B.U.M. International, Inc., filed a Chapter 11 bankruptcy petition in the Central District of California.

11. Several of the "B.U.M. Equipment" articles of clothing filed by Defendants, however, do use "BUM" along with other words on articles of clothing without periods separating the letters.

12. These registrations have been suspended because of the pendency of this lawsuit, and Defendants' application to register the mark "GOLF BUM." Defendants claim that the registrations have been "refused" based on Plaintiff's receipt of "Letters of Refusal." However, a review of

the documents from the Patent and Trademark Office indicates that the applications were merely "suspended" pending the disposition of ten prior applications for registration of trademarks containing the word "BUM", such as "BEER BUM", "FOOTBALL BUM", "BASKETBALL BUM", etc., filed by Defendant Goldwitz.

13. Defendants argue that there was no proof of these figures and that they should have a right to cross-examine Plaintiff regarding these. Defendants overlook the fact that the initial hearings on the preliminary injunction lasted for portions of 15 days and that there was ample opportunity to cross-examine Plaintiff's witnesses at these hearings. Moreover, to the extent Defendants suggest that the 1992 sales figure should be $100,000,000 rather than $150,000,000, that difference is irrelevant to our decision.

14. Defendants claim that for several years Defendant Goldwitz stopped doing business with Plaintiff. Plaintiff does not dispute that fact in its Reply.

15. Defendants assert that they never actually sold clothing with the trademark "BUM" standing alone. It does not appear that this fact is in dispute.

tained an attorney to search the availability of the trademark "GOLF BUM," and, apparently, due to an incomplete research, the attorney advised Defendants that the trademark was available.

Additionally, Defendants have manufactured and sold shirts entitled "Beverly Hills Beach Bum," "Hockey Bum," "Bowling Bum," "Football Bum," and "Basketball Bum", and have filed applications with the Patent and Trademark Office to register at least ten other trademarks for use on various types of clothing, all of which used the word "BUM" as the dominant and common feature.

Virtually all of Plaintiff's clothing is 100% cotton, whereas Defendants' products were not, at least at the outset, 100% cotton.[16] Thus, in this Court's decision on the preliminary injunction, we found that Plaintiff's reputation could be damaged if Defendants were to again sell merchandise of inferior quality. 832 F.Supp. at 39.

At the time of the preliminary injunction hearings, Defendants had sold only $7,000 in "BUM" merchandise. Defendants have other lines of clothing which do not bear the "BUM" mark.

Prior to Defendants' commencing to use the "BUM" mark on items of clothing, other than Plaintiff's registrations there was only one prior third-party registration for a "BUM" mark, that being the registration of a MacGregor for "Beach Bum."

### Discussion

We begin with a review of the legal standards governing trademark infringement cases. Plaintiff has alleged infringement of its registered "BUM" trademarks under section 32 of the Lanham Act, 15 U.S.C. § 1114, and infringement of its unregistered "BUM" trademarks under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

For Plaintiff to establish infringement of a registered trademark under the Lanham Act,

it must show that Defendants used in commerce, without Plaintiff's consent, a "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).

Plaintiff has also filed suit under 15 U.S.C. § 1125(a), which, although somewhat broader in its reach, prohibits similar conduct and it is not limited to registered trademarks. This section deems liable for false designation of origin

[a]ny person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin ... of his or her goods....

15 U.S.C. § 1125(a)(1)(A).

The Supreme Court has held that the general principles qualifying a mark for registration under section 2 of the Lanham Act, 15 U.S.C. § 1052, are generally applicable in determining whether an unregistered mark is entitled to protection under 15 U.S.C. § 1125(a). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992); *see also Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir.1992); *Pfizer, Inc. v. Astra Pharmaceutical Products, Inc.* 858 F.Supp. 1305, 1317 (S.D.N.Y.1994). This Court has previously determined that the "BUM" trademark is a fanciful mark and is, therefore, considered a strong mark and entitled to the most protection. 832 F.Supp. at 38.

---

**16.** There is some dispute as to whether all of Plaintiff's sportswear is 100% cotton. Defendants cite one example of Plaintiff's clothing with a 92% cotton composition. We do not find this to be a material deviation from the vast majority of Plaintiff's 100% cotton clothing. Defendants

also argue that Plaintiff's clothing is not fire-rated, thus rendering it inferior to Defendants' sportswear. Again, no new evidence has been presented which would warrant our reconsidering this Court's prior ruling on this issue.

Thus, regardless of whether Plaintiff is relying on its registered marks or its unregistered marks, the critical issue in determining whether Defendants have infringed Plaintiff's trademarks is whether Defendants' use of the word "BUM" in conjunction with other words on sporting clothes is likely to cause confusion with respect to the source or origin of the goods.

As noted above, this Court has previously determined that Plaintiff's wide use of the "BUM" mark on its sportswear constituted a family of marks entitled to protection. 832 F.Supp. at 38. This Court further held that the family of marks covers both those marks which came into existence before and after defendants entered the market of "BUM" clothing. *Id.* (citations omitted). This Court has also previously determined that a likelihood of confusion existed between Plaintiff's family of "BUM" marks and Defendants' use of the "BUM" mark in conjunction with other words on similar clothing as Plaintiff sells. *Id.* at 39.

■ Summary judgment may be an appropriate vehicle for granting a permanent injunction in cases, such as this, where all factual disputes were determined at the hearing on the preliminary injunction. *See United States v. McGee,* 714 F.2d 607, 613 (6th Cir.1983); *United States v. Byrd,* 609 F.2d 1204, 1209 (7th Cir.1979); *Brotherhood of Railroad Carmen v. Chicago & N.W. Ry. Co.,* 354 F.2d 786 (8th Cir.1965); *Microsoft Corp. v. CMOS Technologies, Inc.,* 872 F.Supp. 1329 (D.N.J.1994); *Securities & Exchange Commission v. Netelkos,* 638 F.Supp. 503 (S.D.N.Y.1986); *American Airlines, Inc. v. Transport Workers Union of America,* 45

F.R.D. 1, 2 (N.D.Okla.1968); *Houghton Mifflin Co. v. Stackpole Sons, Inc.,* 31 F.Supp. 517 (S.D.N.Y.1940); *but see Securities & Exchange Commission v. North American Research and Development Corp.,* 59 F.R.D. 111 (S.D.N.Y.1972). The parties were given a full opportunity to present all of the evidence available to them at the preliminary injunction hearing.[17]

Contrary to the role that Defendants would ask us to assume in deciding Plaintiff's Motion for Summary Judgment, we do not sit as a reviewing court to review and reconsider the same evidence that was previously considered in granting Plaintiff the requested injunctive relief, which injunction was upheld on appeal. The Second Circuit has already determined that none of this Court's factual findings on the preliminary injunction were clearly erroneous. Furthermore, the Second Circuit reviewed *de novo* the legal issue of likelihood of confusion between the two trademarks and upheld this Court's determination that there was a likelihood of confusion between Plaintiff's and Defendants' marks. *See* note 5, *supra.*

Based on the facts presented at the hearing on the preliminary injunction and this Court's rulings based on these facts, Plaintiff contends that there are no genuine issue of material fact to be tried and that, therefore, summary judgment is appropriate.

Defendants counter that a key case on which this Court relied in its earlier ruling on the preliminary injunction has been reversed on appeal by the Second Circuit. *Arrow Fastener Co., Inc. v. Stanley Works,* 870 F.Supp. 427 (D.Conn.1994), *rev'd,* 59 F.3d 384 (2d Cir.1995).[18] Although the district court's

---

17. In accordance with Rule 65(a)(2), Fed.R.Civ. P., this Court finds that all of the evidence presented at the hearing on the preliminary injunction would have been admissible at a trial on the merits and, therefore, is part of the record in this case. Accordingly, this Court considers that evidence in deciding whether a permanent injunction should issue.

18. In the *Arrow Fastener* case, the plaintiff, a manufacturer of hand-operated staple guns bearing a registered trademark "T–50" brought a trademark infringement action against the defendant, a competitor who manufactured pneumatic staplers, based on the defendant's use of "T50" as part of a model number on its staplers. The

district court entered judgment for the plaintiff, permanently enjoining the defendant's use of "T50" or "T–50" as a mark. On appeal, the defendant did not dispute that T–50 was a valid trademark. Rather, its position was that there was no likelihood of confusion. The Second Circuit agreed, based on its analysis of the eight *Polaroid* factors. Of particular significance were the Court's holdings that the "T–50" mark could not be both a model number and an arbitrary trademark and that, although it had some strength, it was not to be accorded broad protection. The Court also found that the defendant's use of T50 as part of a multi-digit model number

decision was in fact reversed, the Second Circuit did not overturn any of the legal principles for which the case was cited by us in our earlier decision. The district court's decision was cited by this Court for the propositions that Plaintiff's mark was strengthened by evidence of advertising, sales and name recognition associated with the mark, 832 F.Supp. at 38, and the fact that the various forms of the "BUM" mark, whether capitalized or separated by periods, are aurally identical was significant in finding a likelihood of confusion, *id.* Neither of these black-letter principles of trademark law was reversed by the Second Circuit's decision. *See* 59 F.3d at 393–95. Indeed, in discussing the law applicable to determining whether secondary meaning has attached to a mark, the Second Circuit specifically held that the factors relevant to the inquiry of secondary meaning include advertising expenditures, consumer studies, sales, length and exclusivity of the mark's use. *Id.* at 393. And, as to the latter proposition, the Second Circuit held that, in judging the similarity of marks, a court should consider "all factors that could reasonably be expected to be perceived by and remembered by potential purchasers." *Id.* at 394 (citations omitted). Certainly, one of those factors would be whether the marks were aurally identical. Therefore, we find nothing in the *Arrow Fastener* decision that compels a different result than that which we previously reached.[19] The next argument advanced by Defendants in opposition to the Motion for Summary Judgment is that there is new evidence that warrants a stay of the preliminary injunction. For purposes of this motion, we review this new evidence to determine whether it raises a genuine issue of

material fact, so as to preclude our granting summary judgment in favor of Plaintiff.

Defendants argue at length that Plaintiff's use of the registered trademark symbol "®" with the word "BUM" alone, as evidenced by the articles of clothing and the bag submitted to the Court, *see* note 7, *supra*, proves Plaintiff's intent to deceive the public. Defendants characterize the merchandise bearing the "BUM" trademark with the encircled "R" as "illegal merchandise" and "illegal encircled 'R' goods" that Plaintiff is shipping into the public domain. Defendants offer as proof of the deception that has allegedly already occurred, newspaper ads by retailers showing "BUM" standing alone with the registered trademark symbol, "®". We are not persuaded by Defendants' arguments that Plaintiff's use of the trademark symbol with the word "BUM", whether legal or illegal,[20] somehow divests Plaintiff of the protections afforded its "BUM" family of trademarks.

Defendants argue that this evidence proves that Plaintiff has come into this Court with unclean hands and, therefore, Plaintiff is not entitled to any relief whatsoever. All of the cases cited by Defendants are distinguishable in that they do not involve a family of marks, but rather a single mark portrayed as a registered trademark, when in fact no registration had been obtained, *Straus v. Notaseme Hosiery Co.*, 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590 (1916); *Four Roses Products Co. v. Small Grain Distilling & Drug Co.*, 29 F.2d 959 (D.C.Cir.1928), or where material misrepresentations were made as to the words for which the plaintiff sought trademark protection, *Clinton E. Worden &*

was not confusingly similar and that the products lacked proximity.

**19.** Defendants also cite as a "new" case, *Time Warner Entertainment Co. v. Does*, 876 F.Supp. 407 (E.D.N.Y.1994), which they argue compels a result different than that reached by this Court. This case concerned whether the plaintiff in a copyright and trademark infringement case was entitled to an *ex parte* seizure order. The court denied the order based on the fact that the plaintiff sought to have the seizure performed by a private investigator (rather than a U.S. Marshal as in the instant case), the plaintiff's failure to provide a sufficient description of the premises to

be searched, and the plaintiff's overly broad description of the goods to be seized. None of those factors are present in this case. More significantly, however, the propriety of the *ex parte* seizure order in this case is not an issue before this Court on this Motion for Summary Judgment or on Defendants' Motion for Stay of the Preliminary Injunction.

**20.** We do not decide, and we need not decide for purposes of our ruling on this motion, whether Plaintiff's use of the registered trademark symbol, "®", with "BUM" alone was an illegal use of the registered trademark symbol.

*Co. v. California Fig Syrup Co.,* 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 (1903). Again, without deciding whether Plaintiff's conduct was proper, this argument overlooks the protections afforded to a family of marks as opposed to each individual mark.

■ Further, in order for Defendants to avail themselves of the equitable defense of "unclean hands," the alleged misconduct by Plaintiff must be directly related to the merits of the controversy between the parties. *See Saxon v. Blann,* 968 F.2d 676, 680 (8th Cir.1992); *Ciba–Geigy v. Bolar Pharmaceutical Co., Inc.,* 747 F.2d 844, 855 (3d Cir. 1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 828 (11th Cir.1982). As the Second Circuit has held, the defense of unclean hands applies "only with respect to the right in suit." *Warner Bros. Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir.1983); *see also W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir.1970); *Russian Kurier, Inc. v. Russian American Kurier, Inc.,* 899 F.Supp. 1204, 1211 (S.D.N.Y.1995). Alleged " '[m]isconduct in the abstract, unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.' " *A.H. Emery Co. v. Marcan Products Corp.,* 389 F.2d 11, 18 (2d Cir.) (quoting *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963)), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). Accordingly, since the conduct of Plaintiff of which Defendants complain does not relate directly to the suit before us, we hold that the affirmative defense of unclean hands in unavailable to Defendants.

■ Furthermore, while Plaintiff does not hold a registered mark for the word "BUM" standing alone, Plaintiff may claim protection for this common component of its family of marks. *See McDonald's Corp. v. McBagel's, Inc.,* 649 F.Supp. 1268, 1272 (S.D.N.Y.1986). Thus, Defendants' lengthy arguments that Plaintiff is not entitled to injunctive relief or to seek protection of its the "BUM" trademark because the word "BUM" standing alone is not registered overlooks the fact that "BUM" is the dominant component of Plaintiff's family of marks and is entitled to protection. "A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. v. McDonald's Corp.,* 932 F.2d 1460, 1462 (Fed.Cir.1991). "There must be a recognition among the purchasing public that the common characteristic is indicative of a common origin of the goods." *Id.* By establishing a family of related marks, the owner can obtain protection even as to combinations of the family name which the owner does not use.[21] Thus, Plaintiff's "BUM" trademarks, whether registered or not, constitute a family of marks, and Plaintiff is entitled to trademark protection for the word "BUM" even though it has not been registered.

Defendants also devote a great deal of their memoranda to the issues of exactly which trademarks Plaintiff was using and when, apparently in an effort to defeat Plaintiff's claim to a family of marks. For example, Defendants claim that the only "BUM" trademark used and advertised by Plaintiff through 1989 was "b.u.m. equipment." All of the evidence on which Defendants rely in this regard was before this Court when it considered Plaintiff's Motion for Preliminary Injunction, and was part of the record when this injunction was appealed to the Second Circuit. We are not persuaded that there is any reason to change our prior factual findings.

More importantly, since we have been presented with no new evidence to dissuade us from this Court's earlier holding that these marks constitute a family of marks, which were in use prior to Defendants' use of related junior marks, the precise marks that were

---

**21.** Perhaps the most famous family of marks is the "Mc" prefix associated with food and other products, which McDonald's Corporation owns. *See Id.; McDonald's Corp. v. McBagel's, Inc., supra; McDonald's Corp v. Druck and Gerner* *DDS, P.C., d/b/a McDental,* 814 F.Supp. 1127 (N.D.N.Y.1993); *Quality Inns International, Inc. v. McDonald's Corp.,* 695 F.Supp. 198 (D.Md. 1988).

used and the exact dates of their use are not critical to our decision. *See American Standard, Inc. v. Scott & Fetzer Co.,* 200 U.S.P.Q. 457, 459 (T.T.A.B.1978).

 Thus, we find that there is no genuine issue of material fact that Plaintiff was the prior owner and user of the "BUM" family of marks on items of sportswear and that Defendants' use of "BUM" on similar items of sportswear is likely to cause confusion amongst the public as to the origin of the goods in question. Defendants have presented no new evidence that would warrant our vacating our earlier findings of infringement by Defendants' and the injunctive relief that was granted based on these findings.

Summary judgment is appropriate where, as here, Plaintiff has' proven that there is no genuine issue of material fact and that no rational jury could find in favor of Defendants. *See Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219 (2d Cir.1994); *Lang v. Retirement Living Publishing Co.,* 949 F.2d 576 (2d Cir.1991). Although there are minor factual disputes between the parties, as the Second Circuit observed in *Lang, supra,* " 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' " 949 F.2d at 580, quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original) (also citing the following cases affirming the grant of summary judgment in trademark infringement cases: *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112, 115 (2d Cir. 1984); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 876 (2d Cir.1986); *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir. 1990), *cert. denied,* 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991)).

In a case very similar factually to the instant case, the Second Circuit held that summary judgment for a trademark owner was appropriate on claims of trademark infringement and unfair competition when the trademark owner had shown that a rival jeans manufacturer was using the trademark owner's registered back pocket stitching pattern trademark on its competing jeans, and the undisputed evidence showed that the trademark was intimately associated with the trademark owner's products in the minds of jeans consumers. *Lois Sportswear, supra,* 799 F.2d at 868, 876. In that case, the Second Circuit, citing *Liberty Lobby, supra,* held that it is only disputes òver facts that might affect the outcome of the suit under the governing law that will properly preclude the entry of summary judgment. 799 F.2d at 876. Here, no such facts have been presented.

### Conclusion

Accordingly, we grant Plaintiff's Motion for Summary Judgment and find that Defendants Goldwitz and Lindsay have infringed and counterfeited Plaintiff's family of "BUM" trademarks.[22] We further grant to Plaintiff the permanent injunctive relief requested in its motion, that Defendants be and are hereby permanently enjoined from using, in connection with the advertising, offering for sale, or the sale of clothing or related accessories, any mark or trade dress that includes the letters "BUM" in lower or upper case, separated by periods or without periods, spread apart or alone, or in combination with any word or words, design or designs.

The Clerk will enter judgment accordingly.

**SO ORDERED.**

---

**22.** Summary judgment. is also appropriate on Plaintiff's state common-law and statutory claims. To the extent that a party's actions violate the trademark infringement provisions of the Lanham Act, they automatically violate section 42–110b of Connecticut's Unfair Trade Practices Act. *Dial Corp. v. Manghnani Inv. Corp.,* 659 F.Supp. 1230, 1238–39 (D.Conn.1987).